UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:

JEOFFREY WHITE,

    Plaintiff,

v.

BROWARD SHERIFF GREGORY TONY, and
ROBERTO RAMOS, individually, and AMANDA TORRES, individually,

    Defendants.

_____/

## COMPLAINT

1)    This a civil action by JEOFFREY WHITE seeking money damages in excess of $50,000, exclusive of costs and interest against ROBERTO RAMOS, individually, AMANDA TORRES, individually, and GREGORY TONY, in his capacity as SHERIFF OF BROWARD COUNTY ("SHERIFF").

2)    This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and the First, Fourth and Fourteenth Amendments to the United States Constitution. The United States District Court for the Southern District of Florida has jurisdiction of this action under 42 U.S.C. § 1983, 28 U.S.C. § 1331, and 28 U.S.C. § 1343. PLAINTIFF further invokes the supplemental jurisdiction of the United States District Court to hear pendant State tort claims arising under State law, pursuant to 28 U.S.C. § 1367(a).

3) The terms "false arrest", "illegal detention", and "false imprisonment" are used interchangeably throughout this pleading and it is intended they mean the same thing.

## PARTIES

4) At all times material, PLAINTIFF JEOFFREY WHITE ["WHITE"] was a resident of Broward County, Florida, and *sui juris*.

5) Defendant, GREGORY TONY ["SHERIFF"or "BSO"] is the Sheriff of Broward County, Florida, and is otherwise *sui juris*. GREGORY TONY is sued in his official capacity.

6) At all times material hereto, Defendant ROBERTO RAMOS [hereinafter "RAMOS"] was over 18 years of age and was *sui juris*.

7) At all times material, RAMOS was a deputy sheriff, employee, agent and a law enforcement officer of BSO and is being sued in his individual capacity. At all times material, RAMOS was acting under the color of state law.

8) At all times relevant hereto, Defendant RAMOS was a deputy sheriff employed by SHERIFF and was acting in the course and scope of his employment for SHERIFF as a deputy sheriff.

9) At all times material hereto, Defendant AMANDA TORRES [hereinafter "TORRES"] was over 18 years of age and was *sui juris*.

10) At all times material, TORRES was a deputy sheriff, employee, agent and a law enforcement officer of BSO and is being sued in her individual capacity. At all times material, TORRES was acting under the color of state law.

11) At all times relevant hereto, Defendant TORRES was a deputy sheriff employed by SHERIFF and was acting in the course and scope of her employment for SHERIFF as a deputy sheriff.

12) All conditions precedent to the filing of this lawsuit have been fulfilled pursuant to Florida Statutes §768.28.

13) PLAINTIFF presented his claims in writing to SHERIFF by means of a letter of demand for damages within three (3) years of the accrual of cause of action.

14) DEFENDANT SHERIFF never made final disposition of the written claims of PLAINTIFF within six (6) months of his presentation.

.

## FACTS

15) On or about June 6, 2020, SHERIFF drove his vehicle to the Vista Garden Condominiums located at 733 SE 1st Way, Deerfield Beach, Broward County, Florida, where his friend Zachary Battistone lived.

16) SHERIFF drove to Battistone's residential complex at Battistone's request to provide a ride to Battistone to a local convenience store so that Battistone could purchase a car charger for his cell phone.

17) After picking up Battistone, they drove to the convenience store. Upon arrival Battistone went into the store and purchased the charger and non-alcoholic refreshments

18) They returned to the residential complex where PLAINTIFF backed his vehicle in the parking spot assigned to Battistone's residence.

19) The parking spot was adjacent to the entrance to the building where Battistone resided. It was in a well-lit location. The parking lot and residential complex were not in a high crime activity location.

20) Battistone and PLAINTIFF remained in the vehicle socializing and drinking their refreshments while the phone was charging.

21) During this time period, the car and air conditioning remained running and the windows remained closed.

22) At or about the same time the Broward Sheriff received a call from a tenant in the building about a noise complaint occurring in a unit on the upper floor of the building caused by an adjacent apartment. Neither Battistone nor PLAINTIFF had anything to do with the complaint.

23) The Broward Sheriff dispatched Deputy RAMOS to the building for that complaint. RAMOS went to the building.

24) Upon completion of that service call, RAMOS was returning to his car when he noticed PLAINTIFF's car.

25) Instead of returning to his vehicle, RAMOS went to PLAINTIFF's vehicle on the driver side. PLAINTIFF was in the driver seat. Battistone was in the front passenger seat.

26) At all times neither Battistone nor PLAINTIFF was engaged in any criminal conduct.

27) At all times, no probable cause nor reasonable suspicion existed that Battistone or PLAINTIFF was committing any crime, had committed any crime, or was going to commit any crime. At all times, there was no legal basis to believe that Battistone and PLAINTIFF were armed or posed a risk or danger to TORRES and RAMOS.

28) At all times the car was legally and properly parked.

29) At all times Battistone and PLAINTIFF were never engaged in the use of any illegal substance nor was their any odor of any illegal substance being emitted from the vehicle.

30) RAMOS called for backup.

31) At some time after the first encounter by RAMOS with Battistone and PLAINTIFF, TORRES arrived as backup.

32) At or about the time of her arrival, TORRES turned on her body worn camera.

33) RAMOS had not turned on his body worn camera.

34) When TORRES turned on her camera, RAMOS was encountering PLAINTIFF who was sitting in the driver seat. Battistone was sitting in the front passenger seat.

35) At no time did RAMOS and TORRES observe any conduct by PLAINTIFF or Battistone that created a reasonable suspicion of criminal activity by either of them.

36) At most RAMOS and TORRES had the limited right to engage in a citizen's encounter with Battistone or PLAINTIFF.

37) Nonetheless, RAMOS ordered PLAINTIFF to lower his window, provide him with his driver license, and exit the vehicle.

38) Nonetheless, TORRES ordered Battistone to exit the vehicle, turn off his telephone, place it on top of the vehicle, and sit on the wet ground in front of the vehicle.

39) Battistone and PLAINTIFF were not free to leave.

40) When Battistone protested that he had done nothing wrong and he lived there, TORRES told him to be silent and that they knew what Battistone and PLAINTIFF were doing there.

41) At no time did TORRES have any information or reasonable suspicion that Battistone or PLAINTIFF were engaged in any criminal activity.

42) TORRES acted in all respects, including turning on and off her body worn camera, to cover up all misconduct by herself and RAMOS.

43) TORRES acted in all respects to assist RAMOS in his improper and illegal conduct.

44) While maintaining custody of PLAINTIFF, RAMOS took PLAINTIFF to a location away from the vehicle where he questioned PLAINTIFF.

45) When RAMOS did not get any admissions of misconduct, as none existed, RAMOS took PLAINTIFF to his patrol car where he frisked PLAINTIFF, handcuffed him and placed him into the rear of his patrol car.

46) At all times, TORRES knew that RAMOS had no legal basis to handcuff PLAINTIFF and to secure him in the locked cage of his patrol car.

47) RAMOS then returned to the location of Battistone where he and TORRES questioned him. Like with PLAINTIFF, RAMOS did not did not get any admissions of misconduct, as none existed.

48) Then RAMOS and TORRES released Battistone from custody, allowed him to retrieve his cell phone, and directed him to leave the area.

49) Then RAMOS removed PLAINTIFF from the rear caged area of his patrol car and unhandcuffed him. RAMOS instructed PLAINTIFF to leave the city of Deerfield Beach and not return.

50) At which time PLAINTIFF drove his car away.

51) Throughout this time period RAMOS and TORRES would turn their body worn cameras on and off in an effort to conceal their misconduct.

52) At no time was Battistone searched.

6

53) PLAINTIFF's vehicle was never searched nor examined by Defendants RAMOS and TORRES. Nor did they have legal justification to conduct a search of the vehicle.

## COUNT 1 - FALSE ARREST OF PLAINTIFF AGAINST SHERIFF

54) The averments of paragraphs 1 - 53 are repeated herein.

55) The actions by Defendants RAMOS and TORRES as agents of SHERIFF in arresting, handcuffing and detaining PLAINTIFF without probable cause nor legal cause nor reasonable suspicion constitute false arrest of PLAINTIFF.

56) As a direct and proximate result of Defendants RAMOS and TORRES' false arrest of PLAINTIFF, PLAINTIFF suffered grievously, was brought into public scandal with great humiliation, mental suffering, and damaged reputation.

57) As a further direct and proximate result of Defendants RAMOS and TORRES' false arrest of PLAINTIFF, he suffered loss of his liberty and freedom, great humiliation, mental suffering, mental anguish, and loss of capacity for the enjoyment of life. PLAINTIFF's losses are either permanent or continuing and swill suffer the losses in the future.

WHEREFORE, PLAINTIFF prays in regard to the DEFENDANT SHERIFF:

a) Judgment for compensatory damages in excess of $75,000;

b) Costs of suit;

c) Prejudgment interest;

d) Trial by jury as to all issues so triable; and

e) Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 2- 42 U.S.C. § 1983 VIOLATION OF CIVIL RIGHTS CLAIM (FOURTH AMENDMENT) OF PLAINTIFF AGAINST DEFENDANTS RAMOS and TORRES

58) The averments of paragraphs 1 - 53 are repeated herein.

59) Defendants RAMOS and TORRES proximately caused PLAINTIFF's false arrest in the absence of probable cause, legal cause or any reasonable suspicion that PLAINTIFF committed any criminal offense or was otherwise engaged in criminal activity and in violation of his clearly established rights under the Fourth Amendment and 42 U.S.C. § 1983.

60) At all times material, Defendants RAMOS and TORRES acted under the color of the statutes, customs, ordinances, and usage of the State of Florida in the course and scope of employment as deputies of DEFENDANT Sheriff.

61) The actions of Defendants RAMOS and TORRES constitute false arrest of PLAINTIFF.

62) As a direct and proximate result of DEFENDANT Defendants RAMOS and TORRES's false arrest of PLAINTIFF for the said offenses, PLAINTIFF suffered grievously, was brought into public scandal with great humiliation, mental suffering, and damaged reputation.

63) While Defendants RAMOS and TORRES were acting under the authority of the State of Florida and under color of law as a deputy sheriff in the employ of DEFENDANT Sheriff, they subjected PLAINTIFF to the deprivation of the rights and privileges secured to him by the Constitution of the United States to be secure in his person under the Fourth and Fourteenth Amendments within the meaning of 42 U.S.C. § 1983.

64) With regard to the violations of the constitutional rights of PLAINTIFF as alleged in this count, the actions of Defendants RAMOS and TORRES were done with malicious intent, ill

will, spite, intent to injure, evil motive, wickedness, formed design to injure or oppress PLAINTIFF and were done with a reckless or callous indifference to PLAINTIFF's federally protected rights entitling PLAINTIFF to an award of punitive damages against in his individual capacity.

65) As a direct and proximate result of the above-mentioned unconstitutional acts of Defendants RAMOS and TORRES, PLAINTIFF suffered mental anguish, loss of capacity for the enjoyment of life, physical injury, humiliation personally, and loss of his liberty and freedom and civil rights. He suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of his physical and mental condition and suffered a damaged reputation as well as damage to his property. PLAINTIFF's losses are either permanent or continuing and PLAINTIFF will suffer the losses in the future, in violation of PLAINTIFF's civil rights.

WHEREFORE, PLAINTIFF prays against Defendants RAMOS and TORRES:

    a) Judgment for compensatory damages and punitive damages in excess of $75,000;

    b) Cost of suit;

    c) Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

    d) Prejudgment interest;

    e) Trial by jury as to all issues so triable; and

    f) Such other relief as this Honorable Court may deem just and appropriate.

# COUNT 3

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM BY PLAINTIFF AGAINST DEFENDANT SHERIFF

For his cause of action against DEFENDANT SHERIFF in Count 3, PLAINTIFF states:

66) PLAINTIFF realleges and adopts, as if fully set forth in Count 3, the allegations of paragraphs 1-53.

67) As a result of the actions of DEFENDANTS RAMOS and TORRES, PLAINTIFF suffered an impact, emotional distress and psychological trauma.

68) At all times DEFENDANTS RAMOS and TORRES were acting under the authority of the State of Florida and under color of law as deputy sheriffs of the SHERIFF, and in such capacity, as agents servants and employees of the SHERIFF.

69) The psychological trauma and emotional distress caused PLAINTIFF to suffer from severe depression, post-traumatic stress disorder and other physical and mental health injuries.

70) As a direct and proximate result, PLAINTIFF suffered bodily injury and resulting pain and suffering, loss of her freedom, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life. He suffered grievously, was brought into public scandal with great humiliation, endured emotional distress in the form of shame, humiliation, degradation, mental suffering and aggravation of his physical and mental condition. The losses and damages are either permanent or continuing in nature and PLAINTIFF will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF prays:

a. Judgment for compensatory damages against DEFENDANT SHERIFF in excess of $50,000;

b. Cost of suit;

c. Trial by jury as to issues so triable; and

d. Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 4

### BATTERY CLAIM BY PLAINTIFF AGAINST DEFENDANT SHERIFF

71) The averments of paragraphs 1 - 53 are repeated herein.

72) A battery is defined as an unlawfully touching or striking or the use of force against the person of another with the intention of bringing about a harmful or offensive contact or apprehension thereof.

73) The battery consisted of the unlawful touching of PLAINTIFF by RAMOS.

74) At all times DEFENDANT RAMOS acting under the authority of the State of Florida and under color of law as a deputy sheriff of the SHERIFF, and in such capacity, as agent, servant, and employee of the SHERIFF.

75) The conduct of DEFENDANT RAMOS caused harmful or offensive contact with PLAINTIFF.

76) As a direct and proximate result of the battery, PLAINTIFF suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering.

77) The losses are either permanent or continuing and PLAINTIFF will suffer the losses in the future.

78) As a further direct and proximate result of the said battery, PLAINTIFF further suffered mental anguish, endured suffering and aggravation of her physical and mental condition and suffered loss of capacity for the enjoyment of life, and humiliation personally.

WHEREFORE, PLAINTIFF prays:

a. Judgment for compensatory damages against DEFENDANT SHERIFF for compensatory damages in excess of $50,000;

b. Costs of suit;

c. Trial by jury as to all issues so triable; and

d. Such other relief as this Honorable Court may deem just and appropriate.

GARY KOLLIN, P.A.
1856 N. Nob Hill Road, Suite 140
Ft. Lauderdale, FL 33322
Telephone:   (954) 723-9999
Fax:              (954) 791-6565
garykollin@garykollinlaw.com
pleadings@garykollinlaw.com

By: /s/ Gary Kollin
Florida Bar No. 282431